OPINION
{¶ 1} Julius Carter appeals from the judgment of the Montgomery County Common Pleas Court wherein the court held that certain of his funds deposited in the Fifth Third Bank were subject to garnishment to satisfy an outstanding judgment to the appellee, National Check Bureau, Inc., (hereinafter "National Credit").
 {¶ 2} His litigation began when National Credit obtained a default judgment against Carter in the amount of $38,398.30 on February 10, 2004. On June 9, 2004, National Credit filed an affidavit, order, and notice of garnishment of property other than personal earnings pursuant to R.C. 2716.11. Carter requested a hearing on the creditor's right to garnish certain funds in the Fifth Third account. At the hearing before a magistrate, the magistrate stated that Carter testified that all of the monies garnished by the National Credit came exclusively from workers' compensation benefits paid to him by the United States Department of Labor. Carter testified he receives $2409 monthly in benefits. The magistrate noted that it was undisputed that "the sole source of the funds attached by the creditor were Carter's workers' compensation funds that the Judgment Debtor had received and then placed into the subject bank account. In denying Carter's request that these funds on deposit at the bank be determined exempt from garnishment pursuant to R.C. 4123.67, the magistrate held that there is no exemption of benefits after the compensation award has been paid to the claimant, citing Ohio BellTelephone Company v. Antonelli (1987), 29 Ohio St.3d 9.
 {¶ 3} Carter timely objected to the magistrate's findings and recommendations. Specifically Carter objected to the magistrate's factual finding that the exclusive source of the funds in the account was workers' compensation benefits. Carter noted that he submitted to the magistrate a benefit statement from the United States Department of Labor which indicated he was receiving monthly disability payments which are exempt from attachment pursuant to R.C. 2329.66 and R.C. 5115.07.
 {¶ 4} On August 30, 2004 the trial court overruled Carter's objections and noted that Carter had testified that the benefits he was receiving were workers' compensation benefits, not disability payments. In any event, the court stated "the judgment Debtor's argument ignores the fact that it is not his disability and Workers' Compensation benefits that have been attached, but instead his personal funds that he chose to deposit in a financial account."
 {¶ 5} On September 23, 2004, Carter filed a motion to reconsider the trial court's judgment and in it he raised the additional arguments that National Credit had garnished his benefits payment before it was transferred electronically to Fifth Third Bank. Secondly, he argued he never received the benefits because the funds were transferred electronically to the bank and then was subject to the creditor's notice of garnishment.
 {¶ 6} This appeal would normally be considered untimely, but for the fact that we found the August 30, 2004 decision defective for the trial court's failure to follow the requirements of Civ.R. 53. On April 5, 2005, the trial court entered a new order which complied with the civil rule, and thus we will consider Carter's October 15, 2004 appeal as timely but premature.
 {¶ 7} In a single assignment of error, Carter contends the trial court abused its discretion by incorrectly interpreting the facts presented by the exhibits admitted into evidence and the testimony of the witnesses. Specifically, Carter notes that "Exhibit A", the Benefit Statement attached to his objection to the magistrate's report, clearly indicated that the benefit check was sent to him by the federal government on June 12, 2004 and directly deposited into his Fifth Third account three days before National Credit filed its notice of garnishment. Consequently, Carter argues that his benefits were being improperly attached before
payment of them in violation of R.C. 2329.66(A)(9)(G) and R.C. 4123.67. In a related second assignment of error, Carter argues the trial court erred in arriving at the legal conclusion that his disability payments were subject to garnishment. Carter also argues that he never received or controlled the funds in question because they were electronically transferred to Fifth Third and were immediately subject to the notice of garnishment.
 {¶ 8} National Credit argues that Carter's argument that he never received the funds because they were electronically transferred to his bank account after the notice of garnishment should be disregarded by this court because that argument was not made in the objections to the magistrate's report. We agree. Further National Credit argues that workers' compensation benefits are regulated only prior to payment, at least in part because, like a paycheck, they are periodic payments for the support of the recipient. National Credit argues that such benefits once deposited into a bank account lose the characteristic of being workers' compensation benefits and become garnishable assets.
 {¶ 9} In Ohio Bell Telephone Co. v. Antonelli (1987), 29 Ohio St.3d 9, the Ohio Supreme Court held that the proceeds of a workers' compensation award, having been paid to a claimant, are subject to attachment. The court noted in a unanimous opinion, that R.C. 4123.67 expressly exempts workers' compensation benefits only "before payment" is made to a claimant. The court noted that there is no exemption of benefits from attachment provided for under either statute after the award has been paid to the claimant. The court reasoned that the exemption statute was in derogation of the common law, and the legislature had the exclusive authority to determine what should be exempt from the purview of the collection laws. Determining that its construction of the statute neither extended exemptions beyond the limits fixed by the legislature nor impinged upon the statutory right of the debtor, the court reasoned that to the contrary, any construction of the general exemption statute (R.C.2329.66) which specifically referred to the exemption in R.C. 4123.67
that would serve to wholly exempt workers' compensation benefits from attachment would obviate the plain language of R.C. 4123.67.
 {¶ 10} The law governing the exemption of workers' compensation benefits is not uniform across the United States. See Annot. Validity, Construction, and Effect of Statutory Exemption of Proceeds of Workers' Compensation Awards, 41 ALR 5th 473, 534-553. The following are factors cited by courts as relevant: (1) the particular statutory language granting the exemption, (2) how easily the funds are identified as stemming from the award, and (3) whether the character of the award has changed. In Kansas, for example, the statutory language supports extending the exemption protection until after the employee has received the compensation, the funds in the case were easily identifiable, and holding the funds in a CD did not sufficiently change the nature of the money that an exemption is inapplicable. Decker and Mattision Co. v.Wilson (Kan. 2002), 44 P.3d 341. The court noted that its statutory language differed from that of Ohio and noted that the Antonelli court noted that the state legislature provides for the exemption, and it is up to the legislature to change the extent of the protection provided in the exemption. 29 Ohio St.3d at 11.
 {¶ 11} In Vukovich v. Ossic (1937), 50 Ariz. 194, 70 P2d 324
(criticized on other grounds in Frazer, Ryan, Goldberg, Keyt Lawlessv. Smith (App) 184 Ariz. 181, 907 P2d 1384, 190 Ariz. Adv. Rep. 6), the court approved an order holding that funds in a bank representing money paid to a workman as compensation for injuries received in the course of his employment were exempt from garnishment under a workers' compensation statutory provision (Ariz. Rev. Code § 1442 (1928) exempting such compensation from levy. The court reasoned that it would be inconsistent with the act itself, and out of harmony with the end it was enacted to accomplish, to compel industry to take care of those injured during service throughout their incapacity, to hold that compensation is not exempt after it reaches the employee but may be taken by creditors in payment of other debts, since there would be no real exemption because the employee could not use the money until it was paid but once it was paid it was immediately subject to attachment. Instead, the court reasoned that the legislature evidently intended that the exemption should continue so long as compensation may be properly regarded as such, and it does not lose its character as compensation merely because it is paid to an employee and deposited in the bank but retains this status so long as it is kept intact and unmixed with the employee's other funds.
 {¶ 12} The Supreme Court's holding in Antonelli should be contrasted with its holding in Daugherty v. Central Trust Co. (1986),28 Ohio St.3d 441, a year earlier, wherein the court held that personal earnings exempt from creditors' reach pursuant to R.C. 2329.66(A) retain their exempt status when deposited in a personal checking account. The Court rejected the reasoning of Society National Bank v. Tallman (1984),19 Ohio App.3d 127, wherein the Crawford County Court of Appeals reasoned that personal earnings voluntarily deposited in a checking account were not exempt from garnishment under R.C. 2329.66(A) because they lost their character as "personal earnings" once deposited. The Court noted that the statutory language of R.C. 2329.66(A) "strongly indicates that exempted earnings are to remain exempt even after receipt by an employee." 28 Ohio St.3d at 445.
 {¶ 13} In any event, we find no error in the trial court's determination under Antonelli that a compensation award, once paid to a claimant, is subject to attachment. We note, however, that National Credit's ability to attach Carter's compensation award is not controlled by Antonelli or even governed by Ohio law. Undisputed testimony before the magistrate established that Carter's compensation benefits were being paid to him by the U.S. Department of Labor. The magistrate expressly noted this testimony in his findings of fact. The source of Carter's benefits is significant because it should have alerted the trial court and the magistrate that the attachment issue was governed by federal law.
 {¶ 14} In particular, we note that the Office of Workers' Compensation Programs was established by the Department of Labor to administer programs under the Federal Employees' Compensation Act (FECA),5 U.S.C. § 8101, et seq. The FECA obligates the United States to pay compensation to a federal employee for a disability resulting from personal injury sustained while performing his job. 5 U.S.C. § 8102. The FECA also provides that "[c]ompensation and claims for compensation are exempt from claims of creditors." 5 U.S.C. § 8130. In this regard,20 C.F.R. § 10.423 further explains:
 {¶ 15} "(a) As a general rule, compensation and claims for compensation are exempt from the claims of private creditors. This rule does not apply to claims submitted by Federal agencies. Further, any attempt by a FECA beneficiary to assign his or her claim is null and void. However, * * * FECA benefits, including survivor's benefits, may be garnished to collect overdue alimony and child support payments."
 {¶ 16} In light of the foregoing authority, Carter's federal compensation benefits are exempt from attachment by National Credit because they were paid to him by the U.S. Department of Labor though its Office of Workers' Compensation Programs pursuant to the FECA. Accordingly, the trial court's judgment is hereby reversed.
Judgment reversed.
Wolff, J., and Donovan, J., concur.